ANSTEAD, Judge.
This is an appeal from an adjudication of delinquency in which the appellant challenges the trial court’s denial of a motion to suppress. We reverse, concluding that this case is controlled by our decision in Spann v. State, 529 So.2d 825 (Fla. 4th DCA 1988), and the recent decision of the U.S. Supreme Court in California v. Hodari, — U.S. —, — n. 1, 111 S.Ct. 1547, 1549 n. 1, 113 L.Ed.2d 690 (1991).
The undisputed facts reflect that the appellant, J.K., was with a group of other teenagers, all whom dispersed when approached by two uniformed police officers. It is undisputed that the group was doing nothing illegal or that would create a suspicion of illegality. The parties agree that the police had no legal cause to stop or detain any of the children. However, J.K. was pursued by one officer who testified:
I called him by his name because I know him from before. And he just kept walking away_ I said, “Jason, come over here.” And he just kept walking. I screamed at him again, “Jason, come over here.” And that’s when he dropped the ... [bag containing cocaine]. After I retrieved — He dropped — disposed of the item and I told him, “Don’t run from *941 me.” And he stopped. He didn’t run_ [I]f he would have ran or something, and I couldn’t catch him, then I’m not going to follow him.... I would have tried to make contact with him, but if I couldn’t, then— ... [tjhere’s nothing I can do. He’s free to leave.
As to the precise time the bag was dropped, the officer testified:
Q. Right. But as he kept walking from you and you’re saying, “Jason, stop”—
A. I told him, “Jason, come over here. I want to talk to you.”
Q. If he kept walking and just ignored you—
A. No. What he did was, after the second time — The second or third time, he turned around and he said, “What?” and that’s when he dumped it.
The officer then seized the bag, found cocaine rocks inside, and arrested appellant. In Spann we held that a person who stopped and dropped an item in response to a police command to halt was entitled to have the item suppressed, if the police had no lawful reason to stop him. See also Wallace v. State, 540 So.2d 254 (Fla. 4th DCA 1989). In Hodari, under circumstances similar to those involved here, the United States Supreme Court held that citizens are protected by the Fourth Amendment from actual unlawful seizures by the police, but are not protected from attempted unlawful seizures.[1] Hodari holds that a seizure has taken place only when the citizen actually submits to the police command or is physically forced to submit. We believe both Spann and Hodari compel suppression here, since the officer was obviously commanding the appellant to stop, and the appellant had actually turned and responded to the officer’s command at the time he dropped the illegal substance. It appears that a seizure has occurred and, hence, the appellant was entitled to the protection of the Fourth Amendment of the United States Constitution.
Accordingly, we reverse and remand with directions that appellant’s motion to suppress be granted and for further proceedings consistent herewith.
WARNER and WALDEN, JAMES H., Senior Judge, concur.

. While the decision in Hodari is predicated upon an illegal attempt by the police to seize a juvenile, the majority opinion challenges the illegality in a footnote:
California conceded below that Officer Peno-so did not have the "reasonable suspicion” required to justify stopping Hodari, see Terry v. Ohio, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968). That it would be unreasonable to stop, for brief inquiry, young men who scatter in panic upon the mere sighting of the police is not self-evident, and arguably contradicts proverbial common sense. See Proverbs 28:1 ("The wicked flee when no man pur-sueth”). We do not decide that point here, but rely entirely upon the State’s concession.
California v. Hodari, — U.S. —, — n. 1, 111 S.Ct. 1547, 1549 n. 1, 113 L.Ed.2d 690 (1991). This suggests that as a matter of "common sense” the police would have the right to temporarily detain a person whom the police have no right to detain except for the fact that the person walks away upon the approach of the police. Such reasoning would, in fact, emasculate the Fourth Amendment’s protection from unlawful seizures, since a person would have only two choices when the police approached; one, stop and cooperate with the police “voluntarily”; or, two, walk away and risk being temporarily detained under the above reasoning.
We are also not certain that this observation reflects the real world. Of course, a society based upon the rule of law cannot long survive if its members do not respect the law. The degree of respect, however, is directly related to the fairness of the law. In addition, it is absolutely essential that those vested with the awesome authority to enforce the law act lawfully in doing so. It is sad, but true, that in the real society in which we live many of our citizens violate our laws, even the fair ones. Similarly, it is sad, but true, that sometimes citizens do have reason to fear the very persons charged to serve and protect them. This country is presently engaged in a spirited debate over the problem of police violence and misconduct triggered by the release of a videotape depicting the brutal beating of a black California motorist by a host of local and state police. See Prudhomme, Police Brutality!, Time, March 25, 1991, at 16.